## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TIMOTHY HARTNETT,

       Plaintiffs,

vs.                                      No. CIV 10-1105 JB/CG

PAPA JOHN'S PIZZA, INC.,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Compel, filed May 25, 2012 (Doc. 59). The Court held a hearing on the objection June 27, 2012. The primary issues are whether the Court should compel Defendant Papa John's Pizza, Inc. ("Papa John's") to produce: (i) the personnel files of Robert Kemsey,[1] Benny Trujillo, Laura Jackson, and Rick Thompson; (ii) a copy of the Papa John's Workplace Harassment Facilitator Guide from 2005 through 2007; and (iii) the electronic mail transmissions between Papa John officials regarding Plaintiff Timothy Hartnett's termination. The Court will grant in part and deny in part the Motion to Compel. The Court will order that Papa John's produce: (i) the requested personnel files, subject to a confidentiality order; (ii) any copies of the specified workplace harassment guide Papa John's can find after a good-faith search; and (iii) a privilege log of the electronic mail transmissions over which Papa John's is asserting attorney-client privilege. The Court will deny the request for electronic mail transmissions without prejudice, and will permit Hartnett to renew his request if he believes that certain electronic mail transmissions are not subject to the attorney-client privilege.

---

[1]The briefs refer to "Robert Kemsey" and "Robert Kimsey." Because the more frequent spelling is Kemsey, that is how the Court will refer to this employee.

## FACTUAL BACKGROUND

Papa John's employed Hartnett.  See Plaintiff's Memorandum in Support of Summary Judgment ¶ 3, at 1-2, filed May 25, 2011 (Doc. 29-1)("Plaintiff's Mem. Summary Judgment"); Defendant's Opposition to Plaintiff's Motion for Summary Judgment, filed June 14, 2011, ¶ 1, at 2 (Doc. 32)("Defendant's Response").[2]  On August 14, 2007, Plaintiff sustained an injury in an automobile accident.  See Plaintiff's Mem. Summary Judgment ¶ 3, at 2; Defendant's Response ¶ 1, at 2.  Hartnett worked light duty for Papa John's after the accident, and, on October 17, 2007, Papa John's terminated Hartnett's employment for allegedly filing a false mileage voucher.  See Plaintiff's Mem. Summary Judgment second ¶ 2, at 2; Defendant's Response ¶ 2, at 2.

On February 28, 2008, Hartnett submitted a complaint for workers' compensation benefits against Papa John's before the State of New Mexico Workers' Compensation Administration, in Hartnett v. Papa John's Pizza, WCA No. 088-00106.  See Plaintiff's Mem. Summary Judgment ¶ 3, at 1; Defendant's Response ¶ 3, at 2.  The Workers' Compensation Judge ("WCJ") applies the New Mexico rules of civil procedure and rules of evidence.  N.M.S.A. 1978, § 52-5-4; N.M.A.C. § 11.4.4.12; Plaintiff's Mem. Summary Judgment ¶ 4, at 2.

Nineteen contested issues were presented to the WCJ, including whether Hartnett's termination was for good cause.  See Worker's Compensation Memorandum Opinion at 1-3, filed May 25, 2011 (Doc. 29-8)("WCJ Opinion").  Papa John's alleged that it terminated Hartnett for good cause after Hartnett submitted false mileage vouchers.  See Plaintiff's Mem. Summary Judgment at 6; WCJ opinion at 3.  After extensive discovery, the parties tried the case before the

---

[2]Plaintiff's Mem. Summary Judgment contains two paragraphs numbered 2, two paragraphs numbered 3, two paragraphs numbered 12, and two paragraphs numbered 18.  Plaintiff's Mem. Summary Judgment also contains three paragraphs numbered 13.  The Court will refer to the second of each of these as "second ¶ __" and the third paragraph 13 will be "third ¶ 13" so that the parties know to which paragraph the Court is referencing.

WCJ on June 9, 2009.  See Plaintiff's Mem. Summary Judgment ¶¶ 8-13, at 2-3.  On April 20, 2010,

the WCJ, Gregory Griego, issued the WJC Opinion.  See WCJ Opinion at 1.  Judge Griego found

that "the Worker was not terminated for good cause," that the "Employer's investigation was deeply

flawed and relied on information which ultimately appears to be materially unreliable," and that

"there was a clear rush to judgment."  WCJ Opinion at 3.  Judge Griego also found that "there is an

inadequate record in this case to demonstrate that Worker was terminated because of his seeking

workers' compensation benefits."  WCJ Opinion at 3.  On May 13, 2010, Judge Griego entered his

Compensation Order finding that Hartnett "was not terminated for good cause" and awarding

benefits.  Compensation Order at 4, 6-7, filed May 25, 2011 (Doc. 29-3).  The Compensation Order

also stated that "the termination of the Worker was not retaliatory for pursuing a workers'

compensation claim."  Compensation Order at 4.

## PROCEDURAL BACKGROUND

On October 8, 2010, Hartnett filed a complaint in the Second Judicial District, County of

Bernalillo, State of New Mexico.  See Complaint for Damages for Wrongful Termination,

Retaliatory Discharge, Defamation of Character, and Punitive Damages (October 8, 2010), filed

November 19, 2010 (Doc. 1-1).  On November 19, 2010, Papa John's removed the action, pursuant

to 28 U.S.C. § 1441(a) and 1446 to the United States District Court for the District of New Mexico.

See Defendant's Notice of Removal at 1, filed November 19, 2010 (Doc. 1).  On March 9, 2011,

Hartnett filed an Amended Complaint for Damages for Breach of an Implied Contract, Retaliatory

Discharge, Defamation of Character, and Punitive Damages (Doc. 25)("Amended Complaint"),

alleging: (i) breach of an implied contract of employment and breach of the implied covenant of

good faith and fair dealing; (ii) retaliatory discharge; and (iii) defamation.  See Amended Complaint

¶¶ 3-4, at 2.

Hartnett filed a Motion for Summary Judgment on May 25, 2011 (Doc. 29) and Papa John's filed a Cross Motion for Summary Judgment on June 14, 2011 (Doc. 33). <u>See</u> Memorandum Opinion and Order, filed October 7, 2011 (Doc. 47)("MOO"). The Court: (i) granted in part Hartnett's Motion for Summary Judgment and precluded the parties from relitigating the existence of good cause; and (ii) granted the Papa John's Cross-Motion for Summary Judgment and dismissed the retaliatory discharge claim with prejudice. <u>See</u> MOO at 1-2

On April 25, 2012, Hartnett filed his Motion to Compel. <u>See</u> Doc. 59. The motion was in response to Papa John's objections to Hartnett's Requests For Production ("RFP"). Papa John's objects to the request for "personnel files" in RFP Nos. 1 through 4, because the term "personnel file" in the RFP is "undefined, and therefore it is overbroad and unduly burdensome." Defendant's Responses to Plaintiff's 2nd Request for Production at 6-8, filed May 25, 2012 (Doc. 59)("Objections"). Papa John's also asserts that RFP Nos. 1 through 6 "seek information that is neither relevant to the instant action nor reasonably likely to lead to the discovery of admissible evidence." Objections at 6-8. Papa John's argues that producing the personnel files requested in RFP Nos. 1 through 4 could "unnecessarily invade the right of privacy of Papa John's current and/or former employees, including information constituting or pertaining to personnel information." Objections at 6-8.

In the Motion to Compel, Hartnett asserts that he defines "personnel file" as the files on Kemsey, Trujillo, Jackson, and Thompson similar to the file on Hartnett that Papa John's produced voluntarily in the Rule 26 disclosure earlier in the case. Motion to Compel ¶ 5, at 1. Hartnett asserts that RFP Nos. 1, 3 and 4 are necessary, because the personnel files of Kemsey, Jackson and Thompson will demonstrate whether, in comparison to Hartnett's experience, others' promotions were consistent with Papa John's personnel policies. <u>See</u> Motion to Compel ¶¶ 6, 8 at 2-3. Hartnett

also argues that RFP No. 2 seeks relevant information, because Trujillo's personnel file could corroborate Hartnett's allegation in Trujillo's deposition that Trujillo had a "syndrome" that could have influenced his mental state, which Hartnett believes will be an issue at trial.  Motion to Compel ¶ 7 at 3.  Hartnett believes Thompson's personnel file will also allow Hartnett to compare Papa John's process for discipline for other employees.  See Motion to Compel ¶ 9 at 3.  Hartnett states that RFP No. 6 seeks relevant information, because Jackson's expense reports, which detail her time in Albuquerque, New Mexico, will prove that his termination was a race to judgment, without appropriate investigation.  See Motion to Compel ¶ 10, at 3.

Hartnett asserts that RFP No. 7, the request for the Workplace Harassment Facilitator Guide, seeks information which is necessary to show that Papa John's was "inconsistent in following its own policies and procedures."  Motion to Compel ¶ 11, at 3-4.  He argues that RFP No. 12 requests the management inventory report, because Thompson was required to evaluate Hartnett for promotion purposes five days before Hartnett's termination, which could provide an insight into his disposition at a crucial time in the dispute.  See Motion to Compel ¶ 13 at 4-5.  Hartnett then states that Papa John's objected to RFP No. 8, because it believes that the attorney-client privilege protects the electronic mail transmissions that Hartnett requested, as they involve conversations with Papa John's counsel, Carolyn Oyler.  See Motion to Compel ¶ 12, at 4.  Hartnett contends that, because Papa John's did not attach a privilege log to its objections, Papa John's has not met its burden to establish that the material in the electronic mail transmission is privileged.  See Motion to Compel ¶ 12, at 4.

On June 11, 2012, Papa John's filed the Defendant's Response in Opposition to Motion to Compel.  See Doc. 60 ("Response").  Papa John's asserts that D.N.M.LR-Civ 37.1 requires a party moving to compel to attach to its motion both the requests for production and the responses or

objections to the requests.  See Response at 3.  Papa John's argues "as a result of Plaintiff's failure to comply with this Local Rule, Plaintiff's Motion should be denied in its entirety."  Response at 3. Next, Papa John's renews its argument that RFP Nos. 1 through 4 are overly broad, because they seek "documents related to the entire employment period for these individuals without limitation" and "improperly invade the privacy of individuals who are not parties to the lawsuit."  Response at 4-5.  Papa John's asserts that "the personnel files contain confidential, sensitive, and private information, including but not limited to . . . telephone numbers, social-security numbers, and dates of birth for the requested individuals," and the "lack of any benefit that Plaintiff may gain from the materials in the personnel files is outweighed by the privacy concerns of Papa John's current and former employees."  Response at 5.  Papa John's argues that Hartnett's belief that "Mr. Trujillo's mental state will be an issue for the jury only establishes Plaintiff's irrelevant and improper purpose."  Response at 5.  Papa John's then asserts that RFP No. 7 for the Workplace Harassment Facilitator Guide requests a document that is not relevant to the proceedings, because the guide was not applicable when Hartnett was terminated; Papa John's also represents that it "does not have [the document] in its possession, custody or control."  Response at 6.  Finally, Papa John's renews its argument that the attorney-client privilege protects the electronic mail transmissions requested in RFP No. 8, because the request seeks "communications involving Ms. Oyler that occurred following Plaintiff's termination that necessarily contain legal advice and strategy related to Papa John's defense of the worker's compensation matter and this litigation or constitute Ms. Oyler's work product related to the same."  Response at 7.

On June 26, 2012, Hartnett filed his Reply to Motion to Compel.  See Doc. 63 ("Reply").  Hartnett states that he "has no objection to redact [sic] the social security number, date of birth and address in the personnel files" to address Papa John's concerns that turning over the personnel files

could invade an employee's privacy.  Reply at 1.  He then argues that RFP No. 7 is relevant, because it seeks the Workplace Harassment Facilitator Guide that was applicable when Papa John's disciplined Kemsey, and "would show that Ms. Jackson and Mr. Thompson do not apply the corporate policies to their decision making."  Reply at 1.  Finally, Hartnett argues that attorney-client privilege does not shield the electronic mail transmissions requested in RFP No. 8, because "there was no legal decision requested." Reply at 1.

On June 27, 2012, the Court held a hearing.  At the hearing, the Court defined "personnel file" as the files most human resources departments keep and refer to as personnel files, and Papa John's did not object to the definition.  Federal Digital Tape Recorder at 3:56:06-56:15, id. at 3:58:31-37 (June 27, 2012)(Court, Ogden)("FTR").  The Court proposed that the Court order Papa John's to turn over the personnel files subject to a confidentiality agreement.  See FTR at 3:56:24-56:39 (Court).  Papa John's responded that the documents in the personnel files probably do not contain information that Hartnett seeks concerning promotions, discipline, or training.  See FTR at 3:56:39-57:58 (Swanson).  Papa John's added that the files contain sensitive information that is not relevant to the suit.  See FTR at 3:56:39-58:24 (Swanson).  Papa John's agreed to the Court's proposal, but emphasized that Hartnett would not find the information he desired.  See FTR at 3:58:09-58:25 (Swanson).  Hartnett also agreed to the Court's proposal.  See FTR at 3:58:36-58:47 (Fogel).

Next, Papa John's argued with respect to RFP No. 7 that the Workplace Harassment Facilitator Guide does not exist.  See FTR at 3:59:36-59:40 (Swanson).  Hartnett responded that an equivalent program is now online, but that, at the time relevant to the suit,  there was a tangible copy of the guide.  See FTR at 3:59:46-4:00:03 (Fogel).  The Court ordered that Papa John's conduct a good-faith search for any copies of the guide that may exist.  See FTR at 4:00:04-4:00:31 (Court).

In the event that Papa John's is unable to find a copy, the Court ordered that Papa John's state in an amended response what it did to locate a copy.  <u>See</u> FTR at 4:00:33-4:00:58 (Court)

Regarding RFP No. 8, Hartnett asserted that the electronic mail transmissions sought are between "principals" in the company, Bob Smith, and Jackson, and Ms. Oyler.  FTR at 4:01:04-25 (Fogel).  The Court asked Hartnett whether he had received a privilege log regarding the electronic mail transmissions, and Hartnett responded that he had not.  <u>See</u> FTR at 4:01:27-33 (Fogel).  The Court stated that Papa John's should prepare a privilege log covering all of the electronic mail transmissions over which it asserts attorney-client privilege, and which lists the sender and recipients of the messages as well as a general description of the topic of the messages.  <u>See</u> FTR at 4:01:32-4:03:23 (Court).  Both parties agreed to the Court's proposal.  <u>See</u> FTR at 4:03:23-4:03:32 (Fogel, Swanson).

## <u>RELEVANT LAW REGARDING DISCOVERY</u>

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Information is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Federal courts have held that the scope of discovery under rule 26 is broad.  <u>See</u> <u>Gomez v. Martin Marietta Corp.</u>, 50 F.3d 1511, 1520 (10th Cir. 1995);  <u>Sanchez v. Matta</u>, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").  The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."  <u>Hickman v. Taylor</u>, 329 U.S. 495, 507 (1947).  As a result, rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that

is or may be raised in a case." Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 649-650 (D.N.M. 2007)(Browning, J.)(internal quotation marks omitted).

A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." McGee v. Hayes, 43 F.App'x 214, 217 (10th Cir. 2002)(unpublished). See Tottenham v. Trans World Gaming Corp., No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." (internal quotation marks omitted)); Hardrick v. Legal Servs. Corp., 96 F.R.D. 617, 618 (D.D.C. 1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests" (internal quotation marks omitted)).  "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted).

Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998).  Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2.  Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181. at *2 (internal quotation marks omitted).

-9-

When a party asserts attorney-client privilege in response to a discovery request, it is the burden of the party invoking the attorney-client privilege to establish the applicability of that privilege, which is "narrowly construed."  Foster v. Hill, 188 F.3d 1259, 1264 (10th Cir. 1999). Accord Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir. 1995).  It is therefore insufficient for a party to assert, without more, that the documents sought are privileged.  See FDIC v. United Pac. Ins. Co., 152 F.3d 1266, 1276 n. 6 (10th Cir. 1998).  "The same rule is true for assertions that the work-product doctrine protects documents."  United States v. Bd. of Cnty. Commr's of the Cnty. of Dona Ana, No. 08-0501, 2009 WL 2426194, at *4 (D.N.M. July 20, 2009)(Browning, J.).  Accord Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).  Rule 26(b)(5) requires that a party "which withholds information on the grounds that it is privileged or subject to protection as trial-preparation material must identify, in some detail, which information is privileged and describe it in a way that allows the opposing party to ascertain the applicability of the privilege."  United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, 2009 WL 2426194, at *4.  It is "well settled that failure to produce a privilege log . . . may be deemed waiver of the privilege."  Anaya v. CBS Broad., Inc., 251 F.R.D. at 651.  "Although minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances bear against finding a waiver, the absence of evidence that the violating party ever produced a privilege log may justify a waiver of the privilege."  United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, 2009 WL 2426194, at *4 (internal quotation marks omitted).  A privilege log must provide specific descriptions of the documents withheld and permit the opposing party with a meaningful way to determine whether to challenge the claim of privilege.  See Cabot v. Wal-Mart Stores, Inc., No. 11-0260, 2012 WL 592874, at *13 (D.N.M. Feb. 16, 2012)(Browning, J.)("These responses do not allow Cabot to assess

the contents of the document in a meaningful way to determine whether to challenge the claim of privilege.").

## ANALYSIS

The Court will order that Papa John's produce: (i) the requested personnel files, subject to a confidentiality order; (ii) any copies of the specified workplace harassment guide Papa John's can find after a good-faith search; and (iii) a privilege log of the electronic mail transmissions over which Papa John's is asserting attorney-client privilege. The Court will deny the request for electronic mail transmissions without prejudice. The Court will, however, permit Hartnett to renew his request for electronic mail transmissions, after reviewing the privilege log, if he believes that certain electronic mail transmissions are not subject to the attorney-client privilege.

## I.   THE COURT WILL ORDER PAPA JOHN'S TO PRODUCE THE PERSONNEL FILES REQUESTED IN RFP NOS. 1 THROUGH 4 SUBJECT TO A CONFIDENTIALITY AGREEMENT.

Hartnett asks that the Court order Papa John's to produce the personnel files for Kemsey, Trujillo, Jackson, and Thompson. See Motion to Compel at 1. Papa John's did not dispute Hartnett's assertions that the files could lead to relevant information. Instead, Papa John's primarily argued that its employees' privacy interests outweigh the value of the information sought and that requesting it to turn over the entire personnel file would require it to produce irrelevant information. See Response at 6.

Rule 26 provides for broad and liberal discovery. See Gomez v. Martin Marietta Corp., 50 F.3d at 1520; Sanchez v. Matta, 229 F.R.D. at 654. A request for discovery need only be reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1). The Court concludes that the requests for personnel files are reasonably calculated to lead to the discovery of admissible evidence, because the personnel files could contain examples of Papa John's promotion

and discipline practices.  This information could be useful to show how Papa John's treated similarly situated employees and whether it adhered to its policies.

Papa John's also argued that the personnel files could contain sensitive information.  Because the personnel files contain social security numbers and other sensitive information, the Court shares this concern.  See EEOC v. Univ. of Phoenix, No. CIV-05-1048, 2007 WL 1302578, at *4 (D.N.M. Apr. 10, 2007)(Browning, J.)("[S]ocial security numbers are confidential and not reasonably calculated to lead to the discovery of confidential information.").  Papa John's is worried that the request for personnel files impinges on its employees privacy rights because they include specified "telephone numbers, social-security numbers, and dates of birth."  Response at 5.  At the hearing, the parties agreed that the personnel files should be subject to a confidentiality order to protect sensitive employee information.  See FTR at 3:58:09-58:25, id. at 3:58:36-58:47 (Swanson, Fogel). Accordingly, the Court will compel the production of the requested personnel filed subject to a confidentiality order.  Furthermore, the Court will permit Papa John' to redact the social security numbers and other similar irrelevant, sensitive data before producing the personnel files.  A privilege log should accompany any redactions.

Because the Court finds that the requested personnel files are likely to lead to admissible evidence and because the Court has taken steps to protect any sensitive information, the Court orders that Papa John's disclose its personnel files for Kemsey, Trujillo, Jackson, and Thompson.

## II.   THE COURT WILL ORDER PAPA JOHN'S TO CONDUCT A GOOD-FAITH SEARCH FOR THE WORKPLACE HARASSMENT GUIDE AND PRODUCE ANY COPY THAT IT CAN LOCATE.

Hartnett asks that the Court order Papa John's to produce the Workplace Harassment Facilitator Guide that was applicable when Papa John's disciplined Kemsey.  See Reply at 1.  At the hearing, Papa John's asserted that no such guide existed.  See FTR at 3:59:36-59:40 (Swanson).

Harnett responded that the program is now online, but that the guide existed in print form from 2005-2007.  <u>See</u> FTR at 3:56:18-4:00:03.  The Court cannot order Papa John's to produce documents that it does not possess.  <u>See</u> <u>Walker v. THI of N.M. at Hobbs Ctr.</u>, No. 09-0060, 2010 WL 552661, at *11 (D.N.M. Feb. 8, 2010)(Browning, J.)("[T]he Court will not require THI of Hobbs to produce documents it does not possess . . . .").  Because Papa John's has represented that it does not possess the responsive documents that Hartnett seeks, the Court will order a good-faith search for a copy of the guide.  If Papa John's can find a copy of the harassment guide, it must produce it.  If it cannot find a copy, Papa John's must state in an amended response the steps it took to locate the guide and state, subject to Rule 11, that a copy cannot be found.

**III.  THE COURT WILL ORDER PAPA JOHN'S TO PRODUCE A PRIVILEGE LOG OF THE ELECTRONIC MAIL TRANSMISSIONS REQUESTED IN RFP NO. 8 AND <u>DENY THIS REQUEST WITHOUT PREJUDICE TO HARTNET'S RENEWAL.</u>**

Papa John's argued that the attorney-client privilege protect the electronic mail transmissions requested in RFP No. 8.  <u>See</u> Response at 6.  Rule 26(b)(5) requires that, when a party asserts privilege, the party must "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged of protected, will enable other parties to assess the applicability of the privilege protection."  Fed. R. Civ. P. 26(b)(5).  Papa John's failed to attach a privilege log to their claim of privilege.  <u>See</u> FTR at 4:01:27-33 (Fogel).  In the absence of a privilege log, the Court cannot determine whether the attorney-client privilege applies.  <u>See</u> <u>United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana</u>, 2009 WL 2426194, at *4.  At the hearing, the parties agreed that the Court should order Papa John's to produce a privilege log which identifies the sender and recipient of the electronic mail transmissions over which it is asserting the attorney-client privilege, and includes a general description of the topic of the messages.  <u>See</u> FTR at 4:01:32-4:03:32 (Court, Fogel, Swanson).

Accordingly, the Court will order Papa John's to produce a privilege log identifying the electronic mail transmissions over which it asserts privilege, and including: (i) the primary recipient; (ii) anyone who received a copy; and (iii) a general description of the topic of the message.  Hartnett may renew his Motion to Compel after reviewing the privilege log.  At this stage, the Court will not find a waiver of privilege merely because the privilege log was not done at the time Papa John's asserted the privilege.  See United States v. Bd. of Cnty. Commr's of the Cnty. of Dona Ana, 2009 WL 2426194, at *5 ("Preventing a party from invoking the privilege and requiring the production of material that a party is otherwise entitled to shield from discovery is a harsh remedy.").

**IT IS ORDERED** that the Plaintiff's Motion to Compel, filed May 25, 2012 (Doc. 59), is granted in part and denied in part.  The Court will order Defendant Papa John's Pizza Inc. ("Papa John's") to produce: (i) the personnel files of Robert Kemsey, Benny Trujillo, Laura Jackson and Rick Thompson subject to a confidentiality order; (ii) any copies of the applicable Workplace Harassment Facilitator Guide that Papa John's can locate after a good-faith search; and (iii) a privilege log for the electronic mail transmissions over which Papa John's is asserting the attorney-client privilege.  The Court will deny the request for electronic mail transmissions without prejudice. The Court will, however, permit Plaintiff Timothy Hartnett to renew his request, after reviewing the privilege log, if he believes that certain electronic mail transmissions are not subject to the attorney-client privilege.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Patrick L. Fogel
The Fogel Law Firm
Albuquerque, New Mexico

   *Attorney for the Plaintiff*

-14-

Frederick C. Miner
J. Mark Ogden
Littler Mendelson, P.C.
Phoenix, Arizona

*Attorneys for the Defendant*