IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TIMOTHY HARTNETT,

    Plaintiff,

vs.                                                                                                               No. CIV 10-1105 JB/CG

PAPA JOHN'S PIZZA USA, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Papa John's Motion in Limine Re: Exclusion of Hearsay Testimony of Dan Braafhart, filed August 29, 2012 (Doc. 90)("Braafhart MIL"). The Court held a hearing on October 15, 2012. The primary issues are: (i) whether a statement made by Dan Braafhart, Plaintiff Timothy Hartnett's then-supervisor and a managerial employee for Papa John's, Hartnett regarding Hartnett's employment with Defendant Papa John's, USA, Inc., was a statement that Papa John's authorized Braafhart to make; and (ii) whether Braafhart's statement was on a matter that was within the scope of Braafhart's employment relationship with Papa John's; and (iii) whether Braafhart's statement is hearsay and not admissible under any exception. For reasons stated on the record at the hearing and for further reasons herein, the Court will deny Papa John's, Inc.'s motion without prejudice to Papa John's renewing its objection at trial. Hartnett may be able to provide sufficient foundation evidence to show that Braafart was authorized to speak regarding Hartnett's employment with Papa John's or that Hartnett's employment with Papa John's was a matter within the scope of Braafhart's relationship with Papa John's. Because Hartnett may be able to show that Braafart's statement is a statement by the opposing party, and thus not hearsay, the Court will deny Papa John's motion. The Court

denies Papa John's motion without prejudice, however, so that, if Hartnett is unable to provide sufficient foundation evidence, Papa John's may renew its objection at trial.

## FACTUAL BACKGROUND

Hartnett was an employee of Papa John's for nine years. See Amended Complaint for Damages for Breach of an Implied Contract, Retaliatory Discharge, Defamation of Character, and Punitive Damages, ¶ 2.1, at 1, filed March 9, 201 (Doc. 25)("Amended Complaint"). In January of 2003, Hartnett was promoted to the position of Director of Operations. See Braafhart MIL at 2. When he was promoted, Papa John's requested Hartnett to sign a non-competition agreement. See Braafhart MIL at 2. Hartnett was concerned about the agreement and requested two days to review the agreement before signing it; but Dan Braafhart told Hartnett: "Don't worry about it. You're a performer. As long as you perform and don't violate any policies and procedures, you'll be here forever." Plaintiff's Response to Defendant Papa John's Motion in Limine Re: Exclusion of Hearsay Testimony of Dan Braafhart at 1, filed September 11, 2012 (Doc. 99)("Response"). See Transcript of Hearing at 38:23-39: 8, taken Oct. 15, 2012 (Fogel)("Tr.").[1]  Braafhart died on April 5, 2008. See Response at 1.

Hartnett was injured, while at work, in a traffic accident on August 14, 2007. See Amended Complaint ¶ 2.3, at 2. Hartnett reported his injury to his supervisor, Rick Thompson. See Amended Complaint ¶ 2.3, at 2. Thompson did not report the accident to Papa John's or to the Worker's

---

[1]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Hartnett did not include in his Response his assertion that he requested two days to review the non-competition agreement, but that Braafhart's statement caused him to sign the agreement immediately. See Response at 1-3. Because this assertion, made at the hearing, gives context to Braafhart's statement, the Court has included this assertion in the factual section. See Tr. at 38:23-39: 8 (Fogel).

Compensation carrier, actions that Papa John's policies required. See Amended Complaint ¶ 2.4, at 2. Because of Hartnett's injuries from the accident, he was unable to attend Papa John's Inventory Management Meeting in Louisville, Kentucky, held from October 10th to October 12th, 2007. See id. ¶¶ 2.5-2.6, at 2. At the meeting, Papa John's Vice President inquired why Hartnett was not present; Thompson informed the Vice President that Hartnett had been injured in a traffic accident and therefore could not travel to Louisville. See Amended Complaint ¶ 2.7, at 2-3. There was no further discussion of Hartnett's injury at the meeting. See Amended Complaint ¶ 2.7, at 2-3. After the Inventory Meeting, Thompson flew to Albuquerque, New Mexico, where he commenced an investigation into Hartnett. See Amended Complaint ¶ 2.8, at 3.

Thompson's investigation into Hartnett culminated in Papa John's terminating Hartnett on October 17, 2007. See Amended Complaint ¶ 2.8, at 3. At the time Hartnett was terminated, he was a Senior Director of Operations for Papa John's, one grade below that of a vice president. See Amended Complaint ¶ 2.1, at 1-2. As a Senior Director of Operations, Hartnett oversaw ten corporate stores in New Mexico. See Amended Complaint ¶ 2.2, at 8. Hartnett had not been disciplined for any other prior offense before Papa John's terminated him. See Amended Complaint ¶ 2.1, at 2.

**PROCEDURAL BACKGROUND**

On October 8, 2010, Hartnett filed a complaint in the Second Judicial District, County of Bernalillo, State of New Mexico. See Complaint for Damages for Wrongful Termination, Retaliatory Discharge, Defamation of Character, and Punitive Damages, filed in State Court Oct. 8, 2010, filed in federal court Nov. 19, 2010 (Doc. 1-1). On November 19, 2010, Papa John's removed the action, pursuant to 28 U.S.C. §§ 1441(a) and 1446, to the United States District Court for the District of New Mexico. See Defendant's Notice of Removal at 1, filed Nov. 19, 2010 (Doc.

1). On March 9, 2011, Hartnett filed an Amended Complaint for Damages for Breach of an Implied Contract, Retaliatory Discharge, Defamation of Character, and Punitive Damages (Doc. 25)("Amended Complaint"), alleging: (i) breach of an implied contract of employment and breach of the implied covenant of good faith and fair dealing; (ii) retaliatory discharge; and (iii) defamation. See Amended Complaint ¶¶ 3-4, at 2.

Hartnett filed a Motion for Summary Judgment on May 25, 2011 (Doc. 29), and Papa John's filed a Cross Motion for Summary Judgment on June 14, 2011 (Doc. 33). See Memorandum Opinion and Order, filed October 7, 2011 (Doc. 47)("MOO 1"). On October 7, 2011, the Court: (i) granted in part Hartnett's Motion for Summary Judgment and precluded the parties from relitigating the existence of good cause; and (ii) granted Papa John's Cross-Motion for Summary Judgment and dismissed the retaliatory discharge claim with prejudice. See MOO 1 at 1-2. The remaining claims after this point were Hartnett's allegation of breach of an implied contract for employment and of the covenant of good faith and fair dealing, and for defamation. See MOO 1 at 11, 14-16. The parties stipulated to the dismissal of Hartnett's defamation claim on August 31, 2012. See Stipulation to Dismiss Plaintiff's Defamation Claim at 1, filed Aug. 31, 2012 (Doc. 93).

Papa John's filed a Motion for Summary Judgment on August 29, 2012, asking the Court to rule that Papa John's was entitled to judgment as a matter of law regarding Hartnett's only remaining claim -- the breach of an implied contract for employment.[2] See Defendant Papa John's Motion for Summary Judgment Re: Plaintiff's Breach of Contract Claim at 1, filed Aug. 29, 2012 (Doc. 92). On October 29, 2012, the Court denied Papa John's Motion for Summary Judgement.

---

[2]Hartnett did not mention the claim of breach of the covenant of good faith and fair dealing in the Pretrial Order, filed October 25, 2012 (Doc. 123). At the pretrial conference on October 26, 2012, Hartnett confirmed that he will not pursue that claim at trial. See Transcript of Hearing taken October 26, 2012, at 4:22-5:4 (Court, Fogel).

See Memorandum Opinion and Order, filed October 29, 2012 (Doc. 126)("MOO 2").  The Court concluded that a genuine issue of material fact existed whether a reasonable jury could find that Papa John's words and conduct created a reasonable expectation that Hartnett would be terminated only for cause, and whether Papa John's breached that implied contract.  See MOO 2, at 1-2.

Papa John's moves the Court to exclude Braafhart's statement as hearsay under rules 801(c) and 802 of the Federal Rules of Evidence.  See Braafhart MIL at 2.  Papa John's contends that Braafhart's statement is an out-of-court statement being "offered to prove that Papa John's created the expectation of an implied contract of employment with [Hartnett]."  Braafhart MIL at 2.

Hartnett responded on September 11, 2012.  See Response at 1.  Hartnett asserts that Braafhart's statement is "not hearsay and the statement is highly probative on a material issue."  Response at 1.  Hartnett contends that Braafhart's statement is a party opponent's admission, and thus admissible under rules 801(d)(2)(C) and (D) of the Federal Rules of Evidence.  See Response at 2.  Hartnett asserts that a statement qualifies a party opponent's statement if the speaker was "involved in the decision-making process affecting the employment action involved."  Response at 2 (citing Jaramillo v. Colo. Judicial Dept., 427 F.3d 1303, 1314 (10th Cir. 2005)).  Hartnett argues that Braafhart was an agent and employee of Papa John's when he made the statement.  Hartnett also asserts that, because the statement was made in connection with Hartnett's execution of a non-competition agreement, Braafhart was involved in the decision-making process that affected Hartnett's employment.  See Response at 2.

Hartnett argues that the probative value of Braafhart's statement warrants its admissibility at trial.  See Response at 3.  Hartnett asserts that, because the Supreme Court of New Mexico has recognized that oral statements made by an employer may be sufficient to create an implied contract for the employee to be discharged only for cause, Braafhart's statement is relevant and material to

Hartnett's allegation that he had an implied contract to be discharged only for cause with Papa John's. See Response at 3 (citing Kestenbaum v. Pennzoil, Co., 108 N.M. 20, 766 P.2d 280 (1989)).

In response, Papa John's contends that there "is no evidence that Papa John's authorized Braafhart to change its at-will employment relationship with any employee or that making any such statements or taking any such actions were within the scope of his employment with Papa John's," and thus Braafhart's statement is inadmissible as hearsay and does not fit into any exception. See Defendant Papa John's Reply in Support of its Motion in Limine Re: Exclusion of Hearsay Testimony of Dan Braafhart at 1-2, filed Sept. 27, 2012 (Doc. 106)("Papa John's Reply"). Papa John's contends that, in the employment context, a statement by an employer's agent is not an admission by a party opponent "*unless* the speaker had the authority to affect the employment action at issue." Papa John's Reply at 2 (emphasis in original). Papa John's contends that the United States Court of Appeals for the Tenth Circuit has found that a statement by an employee who was not involved in the hiring or promotion process did not fit into the non-hearsay categories of the Federal Rules of Evidence. See Papa John's Reply at 2. Papa John's contends that there is no evidence that Braafhart had the authority to modify Hartnett's Management Agreement or Papa John's Team Member Handbook, both of which expressly provide for Hartnett's employment to be at will. See Papa John's Reply at 3. Papa John's contends that Hartnett's assertion that Braafhart was speaking in the "course and scope of his employment with Papa John's and was [speaking] with authority based on his managerial, supervisory position," is a conclusory argument made without evidence to support it. Papa John's Reply at 3. Papa John's argues that the fact that Braafhart was speaking in "connection with obtaining a non-competition agreement from [Hartnett]" is not a context that would warrant a legal conclusion that Braafhart spoke with the power to modify Hartnett's Management Agreement or at-will status. Papa John's Reply at 4.

The Court held a hearing on the Braafhart MIL on October 15, 2012. <u>See</u> Tr. at 1. Papa John's began by arguing that there "has to be some evidence . . . presented that Dan Braafhart was authorized to speak on the [] subject at issue or that he was talking within the course and scope of his employment." Tr. at 25:13-16 (Prynkiewicz). Papa John's argued that there is no evidence that Braafhart was involved in the decision-making process, and thus, there is no basis to find his statements are not hearsay under rules 801(d)(2)(C) or 801(d)(2)(D). <u>See</u> Tr. at 17:17-25 (Prynkewicz). Papa John's contended that, because there is no evidence Braafhart was authorized to change Papa John's employment-at-will policy, or that he was authorized to renegotiate management agreements, there is no basis for the statement to be anything but hearsay. <u>See</u> Tr. at 26:6-13 (Prynkiewicz).

The Court questioned Papa John's whether authorization was a necessary element for a statement to fall under the non-hearsay definition in rule 801(d)(2)(D), or if making the statement within the course and scope of the speaker's employment was sufficient. <u>See</u> Tr. at 26:21-24 (Court). Papa John's agreed that rule 801(d)(2)(D) does not require the employer's direct authorization for the speaker's statement to not be hearsay. <u>See</u> Tr. at 26:25-27:1 (Prynkiewicz). Papa John's agreed that Braafhart was an employee or agent, and the Court questioned how Braafhart's statements could not fit into rule 801(d)(2)(D) as a statement within the "scope of that relationship," as that element seems broad. Tr. at 27:11-16 (Court). Papa John's asserted that Braafhart's statement is hearsay, because there is no evidence that Braafhart was involved in the decision-making process, a necessary element for this exclusion. <u>See</u> Tr. at 27:27-25 (Prynkiewicz). The Court inquired whether an authority upon which Papa John's relied -- persuasive authority from outside the Tenth Circuit, <u>see</u> <u>Rowell v. Bellsouth Corp.</u>, 433 F.3d 794, 799-800 (11th Cir. 2005) -- for the holding that a statement was not hearsay under rule 801(d)(2)(D) only if the statement was

-7-

made by somebody with decision-making authority was construing the rule too narrowly. See Tr. at 28:1-11 (Court). Papa John's responded that rule 802(d)(2)(D) was a requirement akin to respondeat superior, such that if the employee was speaking outside of his or her authority the statement would not be within the course and scope of employment. See Tr. at 28:12-19 (Prynkiewicz). The Court questioned Papa John's where it found in rule 801(d)(2)(D) that the statement had to be in the "course and scope of employment," a phrase which is not in the rule, and Papa John's contended that an interpretation of the rule required the statement to be in the course and scope of the speaker's employment to be a statement within the speaker's role as an agent. Tr. at 29:1-13 (Court, Prynkiewicz). The Court responded that rule 801(d)(2)(D) mentions only the "scope of that relationship." See Tr. at 29:9-11, 29:14-25 (Court).

Turning to Papa John's Tenth Circuit case on the issue, Jaramillo v. Colo. Judicial Dept., Papa John's argued that the Tenth Circuit did not admit statements that an employee made regarding a possible promotion under rule 801(d)(2)(D), because the employee did not have the authority, within the scope of his relationship with his employer, to make a decision regarding the potential promotion. See Tr. at 30:17-25 (Prynkiewicz). Papa John's thus argued that the speaker must be making a statement regarding something within his or her purview to fall within rule 801(d)(2)(D)'s definition of non-hearsay. See Tr. at 31:1-4 (Prynkiewicz).

The Court then inquired, if Papa John's understanding of rule 801(d)(2)(D) was correct, what Papa John's believes would be required to qualify as non-hearsay under the rule. See Tr. at 31:5-9 (Court). Papa John's stated that some evidence is necessary to show that the speaker was making statements within the speaker's employment relationship and that the speaker was authorized to modify the express contract. See Tr. at 31:9-17 (Prynkiewicz). Papa John's argued that, unless there is evidence that Braafhart had the authority to modify an express agreement between Hartnett

-8-

and Papa John's, Braafhart's statement is not permitted under rule 801(d)(2)(D), and is hearsay. See Tr. at 32:9-13 (Prynkiewicz). Papa John's admitted that Braafhart was Hartnett's direct supervisor, that Braafhart's position involved hiring and termination, and that Braafhart was involved in promoting Hartnett, but stated that Braafhart was not involved in hiring Hartnett. See Tr. at 32:18, 32:21, 32:24-25, 33:2-5 (Prynkiewicz). Papa John's asserted that, although Braafhart had other authority, the scope of his position did not extend to authority to modify Hartnett's express contract for at-will employment, and thus Braafhart's statement is hearsay and inadmissible under rule 802. See Tr. at 33:20-23 (Prynkiewicz). The Court inquired why the statement was not within Braafhart's authority, because Braafhart would be involved in terminating Hartnett. See Tr. at 33:25-34:1 (Court). Papa John's asserted that a position which oversaw termination did not have the authority to modify an express contract. See Tr. at 34:8-14 (Prynkiewicz).

Hartnett then argued that Braafhart, as a vice president and officer of Papa John's, and as the officer who promoted Hartnett to a Director of Operations in 2003 and a Senior Director of Operations in 2005, "controlled the promotion" of Hartnett. Tr. at 35:6-12 (Fogel). Hartnett also asserted that his Management Agreement was modified in 2003, when Hartnett was required to sign employment forms, including a W-4, and the non-competition agreement. Hartnett asserted that the non-competition agreement was a serious agreement for him to sign, because Hartnett's "expertise[] is pizza," and "Papa John's is in every community," so Hartnett would be unable to find work if he left the company for eighteen months, the length of imposed in the agreement. Tr. at 35:17-36:5 (Fogel). The Court inquired whether the record before the Court supported Hartnett's asertion that Braafhart was more than a supervisor, and Hartnett admitted that the current record does not. See Tr. at 36:16-25 (Court, Fogel). Hartnett stated that he would be able to put on sufficient evidence that Braafhart was more than a supervisor at trial, including that Braafhart held regional meetings,

-9-

attended by vice presidents and senior directors of operations. <u>See</u> Tr. at 37:1-2, 37:8-14, 37:17 (Fogel).

Hartnett also argued that Braafhart had the authority to modify Hartnett's express employment contract. <u>See</u> Tr. at 38:1-2 (Fogel). Hartnett asserted that, by executing the non-competition agreement, Braafhart was overseeing a material modification of Hartnett's Management Agreement. <u>See</u> Tr. at 37:25-38:5 (Fogel). Hartnett contended that, in 2003, Papa John's was going through a "reduction in force," at which time some employees were eliminated and the remaining work force was given new titles. Tr. at 38:13-17 (Fogel). Hartnett stated that he was required to fill out employment forms, including a W-4, and an employment application, making the change in Hartnett's employment in 2003 akin to a "new employment relationship." Tr. at 38:17-20 (Fogel). Hartnett asserted that, in the context of this new employment relationship being created, he was asked to sign the non-competition agreement and not a new management agreement. <u>See</u> Tr. at 38:22-25 (Fogel). Hartnett contended that he was concerned about the non-competition agreement, because it would bind his ability to seek work for eighteen months after leaving Papa John's, and that Braafhart's response to Hartnett's concern was to tell him that he did not need to worry about the non-competition and leaving Papa John's. <u>See</u> Tr. at 38:25-39:5 (Fogel). Hartnett contended that Braafhart's statements caused Hartnett to sign the non-competition agreement, rather than taking two days to think about it, as he had requested. <u>See</u> Tr. at 39:6-8 (Fogel). Hartnett argued that Braafhart's statements "induced [him] to enter into a new agreement." Tr. at 39:7-8 (Fogel). Hartnett again contended that he had competent evidence to bring the statement in at trial. <u>See</u> Tr. at 39:9-13 (Court, Fogel).

Papa John's responded that, although Hartnett may be able to provide adequate foundation to have the statement admitted at trial, the Braafhart MIL was based on the record before the Court,

-10-

which did not support Hartnett's contention that Braafhart has the authority Hartnett argues he does. See Tr. at 40:8-12 (Prynkiewicz). The Court inquired of Papa John's why the statement would not be admissible if Hartnett were able to provide all the evidence he says he can. See Tr. at 40:17-21 (Court). Papa John's replied that, even with all of Hartnett's assertions regarding Braafhart's authority, Hartnett has not yet argued or shown that the express Management Agreement was modified. See Tr. at 40:22-25 (Prynkiewicz). Papa John's stated that the employment application that Hartnett signed in 2003 has express language providing for his employment to be at will. See Tr. at 41:1-7 (Prynkiewicz). Papa John's thus argued that, under all of the facts, there is not support for Hartnett's theory that Braafhart modified the Management Agreement. See Tr. at 41:10-14 (Prynkiewicz). The Court noted that Papa John's argument regarding the Management Agreement went to the merits of Hartnett's claim, and not to the admissibility of Braafhart's statement. See Tr. at 41:15-17 (Court).

    The Court inquired how Hartnett could show that Braafhart had sufficient authority to modify an express employment agreement, and Papa John's responded that the testimony of somebody currently in Braafhart's position could be sufficient to show the authority that Braafhart had. See Tr. at 41:15-42:4 (Court, Prynkiewicz). Papa John's stated that such a person will be present at trial to testify. See Tr. at 42:5-9 (Court, Prynkiewicz). Papa John's stated that it would be satisfied with the Court denying its Braafhart MIL at the current time, in anticipation of Hartnett attempting to provide the necessary foundation evidence for Braafhart's statement at trial. See Tr. at 42:16-25 (Court, Prynkiewicz). The Court stated that it may thus need to deny Papa John's motion in limine without prejudice, so that the statement may come in, dependent upon the foundation testimony provided at trial. See Tr. at 43:4-7 (Court).

## RELEVANT LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible." United States v. Christy, No. CR 10-1534 JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802). Under Federal Rule of Evidence 801(c), "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The Tenth Circuit has quoted with approval a case from the United States Court of Appeals for the Second Circuit, stating: "Generally [hearsay evidence] is not admissible . . . because traditional conditions of admissibility, including that the witness be present at the trial, testify under oath, and be subject to cross-examination, all of which together permit a jury to evaluate the reliability and trustworthiness of a statement, are not present." United States v. Gary, 999 F.2d 474, 479 (10th Cir. 1993)(quoting United States v. Cardascia, 951 F.2d 474, 486 (2d Cir. 1991)). Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999). A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including to impeach a witness. See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay. If admitted for impeachment purposes, however, it is not hearsay.").

## RELEVANT LAW REGARDING STATEMENTS THAT ARE NOT HEARSAY UNDER RULE 801(d)(2)(C)

Federal Rules of Evidence rule 801(d)(2)(C) provides for a statement to be admissible as non-hearsay if it "was made by a person whom the party authorized to make a statement on the

-12-

subject." Fed. R. Evid. 801(d)(2)(C). Courts have historically applied agency law to determine whether the declarant was authorized by the party to make the statement at issue. See Grace United Methodist Church, v. City of Cheyenne, 451 F.3d 643, 666-67 (10th Cir. 2005)(finding that a bishop's role within the United Methodist Church included the authority to assign and remove local pastors at will, supervise pastors' work, administer funds to local churches, and retain control over church property if the United Methodist Church were to go out of business made the bishop a "representative of or a party authorized to speak for" the local United Methodist Church that was a party to the action, and the bishop's statements were thus admissible as non-hearsay under rule 801(d)(2)(C)). See also Fed. R. Evid. 801(d)(2)(C) advisory committee's note (describing the relationship contemplated in rule 801(d)(2)(C) as a "principal" and "agent" relationship). The Tenth Circuit has held that the president of a corporation is "authorized" to make statements regarding hiring and termination, and thus a presidents' statements on those subjects are admissible as non-hearsay under rule 801(d)(2)(C). See Fischer v. Forestwood. Co., Inc., 525 F.3d 972, 984 (10th Cir. 2008)("[B]ecause [the declarant] was president of Forestwood at the time of the conversations . . . he was 'authorized' by Forestwood 'to make a statement concerning' hiring and firing." (quoting Fed. R. Evid. 801(d)(2)(C) prior to the 2011 amendments)).

Similarly, the Court has held that the United States' Attorney's Office is authorized by the United States to make a statement regarding a defendant's guilt or innocence in a closing argument for a case the United States' Attorney's Office prosecuted. See United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1120-21 (D.N.M. 2012)(Browning, J.). The Court noted that the rule contemplates the admission of statements which a principal-agency relationship authorizes. The Court found that "treating government attorneys, particularly Department of Justice attorneys, as agents of the United States is the correct approach." 854 F. Supp. 2d at 1119. Because the United

States' Attorney's Office is within the Department of Justice, and the United States has authorized the United States Attorney's Office to prosecute criminal matters, which includes, within the scope of that agency, making statements in federal court, the Court concluded that United State's Attorneys should be considered authorized to "prosecute all criminal offenses against the United States." 854 F. Supp. 2d at 1119. On that basis, the Court found that statements which an Assistant United States' Attorney made in closing arguments qualified as non-hearsay under rule 801(d)(2)(C). See 854 F. Supp. 2d at 1122.

## LAW REGARDING STATEMENTS THAT ARE NOT HEARSAY UNDER RULE 801(d)(2)(D)

The Federal Rules of Evidence exclude from the definition of "hearsay" those statements made by a "party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). The Tenth Circuit has broken this exclusion into a three-part test for admissibility under rule 801(d)(2)(D). See Fischer v. Forestwood Co., Inc., 525 F.3d at 984-85.[3] First, the party seeking to admit the statement must establish the existence of the employment relationship independent of the declarant's statement offered as evidence. Second, the statement must be made during the existence of the declarant's "agency or employment." Fischer v. Forestwood Co., Inc., 525 F.3d at 984 (quoting Fed. R. Evid. 801(d)(2)(D)). Lastly, the statement must concern a matter within the scope of declarant's employment or agency. 525 F.3d at 984.

The declarant need not be available for cross-examination for the statement to be admissible

---

[3]Although the three-part test that the Tenth Circuit articulated in Fischer v. Forestwood Co., Inc., before the 2011 amendments to the Federal Rules of Evidence, the analysis should not be different under the new 2011 restyling of the rules. Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 may still be used in cases after the restyling. Fed. R. Evid. 801, advisory committee's note on 2011 amends.

under rule 801(d)(2)(D).  <u>See</u> 525 F.3d at 984-85.  <u>See</u> also, e.g.,  <u>Savarese v. Agriss</u>, 883 F.2d 1194, 1201 (3d Cir. 1989)("[A] statement by a declarant, deceased at the time of trial, may be admissible under . . . Fed. R. Evid. 801(d)(2)(D)."); <u>Auto-Owners Ins. Co. v. Jensen</u>, 667 F.2d 714, 722 (8th Cir. 1981)(explaining that admissions by a party opponent do not need to be subjected to cross-examination to be admissible).  The Tenth Circuit notes that cross-examination is not required, because admissibility of statements by a party-opponent, as a logical expression of the philosophy of the adversary system, is closely linked to the personal freedom and responsibility that are part of life in a free society.  <u>See</u> <u>Fischer v. Forestwood Co., Inc.</u>, 525 F.3d at 985.  "Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system . . . . No guarantee of trustworthiness is required in the case of an admission."  Fed. R. Evid. 801 advisory committee's note.[4]

The Tenth Circuit dealt with the meaning of "within the scope of" an employment or agency relationship in <u>Rainbow Travel Serv. v. Hilton Hotels Corp.</u>, 896 F.2d 1233 (10th Cir. 1990).  In that case, a travel service sued the Hilton Hotels for breach of a contract.  The travel service had arranged for its clients to stay at the Fointainebleu Hotel in Miami Beach, Florida, but upon arrival, the clients

---

[4]The 2011 restyling of the Federal Rules removed "admissions" from the language of rule 801(d), and uses the term "statements" instead.  Fed. R. Evid. 801(d).  This replacement was purposeful: "The term 'admissions' is confusing because not all statements covered by the exclusion are admissions in the colloquial sense -- a statement can be within the exclusion even if it 'admitted' nothing and was not against the party's interest when made."  Fed. R. Evid. 801, advisory committee's note on 2011 Amendments.

Although the advisory committee's commentary quoted in the text regarding the trustworthiness of "admissions by a party-opponent" was made before the 2011 amendments to the Federal Rules of Evidence, the analysis should not be different under the new 2011 restyling of the rules.  Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 may still be used in cases after the restyling.  Fed. R. Evid. 801, advisory committee's note on 2011 amends.

found that the hotel was over booked and the clients were transported by shuttle bus to a less desirable hotel. Some of the clients were allowed to testify at trial, and they recited statements made by the shuttle bus driver who transported the clients. The "driver told the customers his job was to transport guests who had been bumped from the Fointainebleu and to try to keep them happy." 896 F.2d at 1242. Hilton Hotels objected to the admission of these statements on hearsay grounds, arguing that the bus driver was not qualified to make statements about the hotel's reservation practices. The district court admitted the statements under rule 801(d)(2)(D), and the Tenth Circuit held that the admission was proper. The Tenth Circuit held that the statements were "all related to the scope of his employment with the hotel." 896 F.2d at 1242.

Applying this precedent, the Tenth Circuit has also found that statements made by "a high corporate officer . . . discussing the treatment of his subordinate . . . made while [the officer] was still an agent or employee of the company" are admissible under rule 801(d)(2)(D) as non-hearsay, even though the officer did not participate in the treatment of the subordinate discussed in the statements. Abuan v. Level 3 Comm'cs, Inc., 353 F.3d 1158, 1171-72 (10th Cir. 2003). Rather than participating in the treatment of his subordinate, the officer disapproved of the corporation's action towards his subordinate and left the company, because he was dissatisfied with the way his subordinate had been treated. See 353 F.3d at 1166. The defendant in Abuan v. Level 3 Comm'cs, Inc. argued that the officer's statements could be admissible only if the officer had participated in the employment decision at issue, but the Tenth Circuit noted that the defendant was unable to cite any authority in support of this argument. See 353 F.3d at 1171. The Tenth Circuit held that "[g]iven our ruling in Rainbow Travel . . . a vice president's statements concerning his company's unethical treatment of a direct subordinate" may be admitted under rule 801(d)(2)(D). 353 F.3d at 1172. Similarly, the Tenth Circuit has held that statements which a company president made

regarding the re-hiring of an employee who resigned from the company are admissible under rule 801(d)(2)(D). Fischer v. Forestwood. Co., Inc., 525 F.3d at 977, 984. The Tenth Circuit explained that "because [the declarant] was president of [the corporation] at the time of the conversations . . . he was acting as an agent for [the corporation] and making statements within the scope of his authority." 525 F.3d at 984.

In Jaramillo v. Colo. Judicial Dept., a plaintiff, Kristin Jaramillo, brought a disparate treatment claim and sought to introduce the statements of a co-employee who received the Probation Officer position for which the plaintiff applied instead of her. See 427 F.3d at 1306, 1313. Another applicant for the same position, Arturo Villo, had testified that the employee who received the position, Brian Sandoval, told Villa that a supervisor had promised Sandoval the Probation Officer position before it became available. See 427 F.3d at 1313. Other employees had also testified that a rumor had circulated in the facility that Sandoval was promised the position. However, "[n]one of these individuals claimed to have gotten their information from management-level employees." 427 F.3d at 1314. Jaramillo nonetheless argued that these statements should be admissible under rule 801(d)(2)(D). Citing an opinion from the United States Court of Appeals for the Seventh Circuit, the Tenth Circuit stated: "In order for a statement to qualify as an admission of a party opponent, the speaker 'must be involved in the decisionmaking process affecting the employment action involved.'" 427 F.3d at 1314 (quoting Aliotta v. Nat'l R.R. Passenger Corp., 315 F.3d 756, 762 (7th Cir. 2003)). Because neither Sandoval or any of the other witnesses were involved in the hiring or promotion process, as they were all Jaramillo's co-employees, the statements were outside the scope of their employment and not admissible as statements by a party opponent. See 427 F.3d at 1314.

The Court has previously allowed a party seeking to admit a statement under rule

801(d)(2)(D) to provide foundation testimony at trial that would show the statement is within the rule's provisions. See Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs., Nos. Civ 02-1146 JB/LFG, CIV 03-1185 JB/LFG, 2007 WL 2363147 (D.N.M. Jun. 27, 2007)(Browning, J.). The plaintiff in Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs. brought a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e-2, and 2000e-5, for retaliation against Albuquerque Public Schools, and sought to introduce the statements of a retired instructor who had supervised the plaintiff while the plaintiff worked for Albuquerque Public Schools. See 2007 WL 2363147, at *1, *3-4. Albuquerque Public Schools sought to exclude the statements as hearsay not within any exception. See 2007 WL 2363147, at *1. The Court denied Albuquerque Public School's motion in limine, on the condition that the plaintiff would "first establish[] they were made in the scope" of the retired instructor's employment and could show how he was involved in the decision to hire another person for the position the plaintiff had sought. 2007 WL 2363147, at *4.

## ANALYSIS

The Court will deny Papa John's Braafhart MIL so that Hartnett may provide the foundation evidence necessary to show that Braafhart's statement is not hearsay. Hartnett may be able to show that Braafhart's statements either were authorized by Papa John's, or were within the scope of Braafhart's employment. The Court will deny the Braafhart MIL without prejudice so that, if Hartnett fails to provide sufficient foundation testimony, Papa John's may renew this objection.

Hartnett seeks to admit the statement made by Braafhart, Hartnett's supervisor, in 2003. See Response at 1. Hartnett argues that Braafhart, in his position with Papa John's, had authority over Hartnett's hiring, promotion, termination, and the modification of Hartnett's Management Agreement with Papa John's. See Tr. at 35:6-12, 38:1-2 (Fogel). Papa John's contends that

Braafhart's statements are inadmissible hearsay, because the record does not provide evidence that Braafhart had the authority that Hartnett asserts. See Tr. at 41:8-12 (Prynkiewicz). Hartnett admitted that the record before the Court does not support Hartnett's argument that Braafhart had the authority to oversee Hartnett's promotion or the authority to modify the Management Agreement, but Hartnett requested that he be able to provide sufficient evidence to show that Braafhart's statements are admissible under rule 801(d)(2)(C) or (D) at trial. See Tr. at 36:16-25 (Court, Fogel); id. at 39:9-13 (Fogel).

Braafhart's statements may qualify as non-hearsay under the Federal Rules of Evidence. If Hartnett is able to provide sufficient foundation testimony to show that Hartnett's future with Papa John's was a matter within the scope of Braafart's employment for Papa John's, then the statement would be admissible under rule 801(d)(2)(D). See, e.g., Abuan v. Level 3 Comm'cs, Inc., 353 F.3d at 1171-72 (finding that statements regarding the treatment of a subordinate are within the scope of authority of a high corporate officer's employment and admissible under rule 801(d)(2)(D), where the corporate officer oversaw the subordinate but did not participate in the treatment of the subordinate that was the subject of the officer's statements). Additionally, if Hartnett is able to provide foundation testimony that shows Papa John's authorized Braafhart to make statements regarding Hartnett's employment status, then Braafhart's statements may be admissible under rule 801(d)(2)(C). See United States v. Ganadonegro, 854 F. Supp. 2d at 1119-21(finding that a United States' Attorney is authorized to make statements in federal court regarding a defendant the United States' Attorney prosecutes, and thus those statements are admissible under rule 801(d)(2)(C) as authorized statements where the United States is a party to an action). Papa John's admitted at the hearing that a witness will be available who could testify to the scope of Braafhart's authority, and that testimony could be sufficient foundation evidence for Braafhart's statement to qualify as non-

hearsay under the Federal Rules of Evidence. See Tr. at 41:15-42:9 (Court, Prynkiewicz). For these reasons, the Court will deny the Braafhart MIL, without prejudice, so that Papa John's may renew this objection at trial if Hartnett fails to provide sufficient foundation testimony.

**IT IS ORDERED** that Defendant Papa John's Motion in Limine Re: Exclusion of Hearsay Testimony of Dan Braafhart, filed August 29, 2012 (Doc. 90), is denied without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Patrick L. Fogel
The Fogel Law Firm
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Donald Jay Summer
Charlotte A. Lamont
Littler Mendelson P.C.
Albuquerque, New Mexico

-- and --

Peter Prynkiewicz
J. Mark Ogden
Littler Mendelson, P.C.
Phoenix, Arizona

    *Attorneys for the Defendant*